(Lent Carr representing himself to Jannetta Jordan as an Attorney and fraudulently attaining property at 3300 Laurinburg Road, Raeford, NC 28376)

Receipt of Legal Documents drafted by Attorney Lent Carr and picked up by Attorney Carr at Wake County Detention Center

Exhibit A1

## PROPERTY RELEASE SLIP

INMATE NAME: JANNETTA JORDAN          ID: 124684          CELL: 763          RELEASE DATE: Immediately

I, JANNETTA JORDAN, HAVE RELEASED THE FOLLOWING ITEM(S) TO LENT CAPR

1. Brown envelope containing paperwork; addressed
   to LENT CAPR

1. _____  2. _____  3. _____

4. _____  5. _____  6. _____

7. _____  8. _____  9. _____

I, _____, HAVE RECEIVED THE ABOVE LISTED ITEMS FROM ABOVE INMATE.

PROPERTY OFFICER'S SIGNATURE

APPROVED BY: _____

DENIED BY: _____

*EXHIBIT A2*

| User: WCS2470 | **WAKE COUNTY SHERIFF`S OFFICE** | 02/03/17 17:04:52 |

*733*

## INMATE PROPERTY RELEASE FORM

Booking #:   *136413*   Inmate name:   *Jordan, Jannetta Delois*

| Item | Receipt # | Bin | Qnty | Value | Date Returned | Return By |
|------|-----------|-----|------|-------|---------------|-----------|
| MANILLA BUISINESS ENVELOPE | | 0237 | 1 | | 02/03/17 | Hankins, N |

I,   *Hankins, N*   hereby release the items of personal property listed

above to:   *LENT CARR*   Date: *02/03/17*   *17 : 04*

All of the items of personal property listed above have been received by *LENT CARR*   Date: 02/03/17

_____   _____
Officer Signature / Hankins, N      Inmate Signature

*jproprls2*   Page 1

(Lent Carr representing himself to Jannetta Jordan as an Attorney and fraudulently attaining property at 3300 Laurinburg Road, Raeford, NC 28376)

Receipts of Money placed into the Inmate Account of Jannetta Jordan by Attorney Lent Carr and his wife to maintain stance they were "helping" me

**1246814 : JORDAN, JANNETTA D**

Loc: PSC 7 G 05                Wake County Jail, NC        Acct: WakeNC-76483        4/10/2017 5:04:10 PM        Add 20363  2944010

By: LOCKDOWN From Loby Kiosk WCDC                                Prior Balance:        $0.05

| Add | ATM Deposit 85373 on 4/10/2017 4:03:55 PM by DELTARINA CARR | $40.00 |
| | Paid By: DELTARINA CARR | |
| | | |
| Bill | ATM Fee Fund : Transaction Fee | $1.00 CHRG |
| BillPay | PAYMENT FOR TRANS 2944011 | -$1.00 |
| | | |
| | Main Balance: | $39.05 |

Sign: _____

EXHIBIT B2

4B3

## 1246814 : JORDAN, JANNETTA D

Add 19743  2819277

Loc: PSC 7 B          Wake County Jail, NC          Acct: WakeNC-76483    2/11/2017 7:11:26 PM

By: LOCKDOWN From Loby Kiosk WCDC          Prior Balance:    $29.94

Add          ATM Deposit 78891 on 2/1/2017 6:10:23 PM by LENT CARR          $41.00
             Paid By: LENT CARR

             2/3/17 → return $ in my acct

Bill         ATM Fee Fund : Transaction Fee          $1.00 CHRG

BillPay      PAYMENT FOR TRANS 2819278                -$1.00

             Main Balance:    $69.94

Sign:

Process with Lent Carr representing himself to Jannetta Jordan as an Attorney and fraudulently attaining property at 3300 Laurinburg Road, Raeford, NC 28376

**The State Bar of North Carolina**

EXHIBIT C 1

## **Unauthorized Practice of Law**

N.C. Gen. Stat 84-4 and 84-5 specifically identify the following activities as the practice of law;

- Abstracting and passing upon titles to real estate;
- Preparing or aiding in the preparation of deeds, trusts, wills or other legal documents;

In addition, any activities involving the preparation of legal documents, giving legal advice, or providing legal services for another constitutes the practice of law.

Mr. Carr informed me from the beginning of meeting him, over the telephone, that he was an Attorney. Mr. Carr drafted the Quitclaim Deed and was not of any authority to do such. He filed the Deed knowing that the entire process was completed fraudulently.

A complaint was filed (file number: 18AP0038) the The North Carolina State Bar and on 11/14/2018 the Committee ruled a pertinent fact in this matter, "In late 2016, you met with Jannetta Jordan, who was facing criminal charges, at the Wake County jail. You held yourself out as an attorney. You provided her with legal advice and prepared legal documents. Eventually, you convinced Jordan to convey property to you and obtained a power of attorney from her." (see attached)

EXHIBIT C2
(1 of 4)

October 12, 2018

The North Carolina State Bar
Office of the Counsel
P.O. Box 25908
Raleigh, N.C. 27611
(217 E. Edenton St., Raleigh, NC 27601)

Jannetta Jordan
4160 Laurinburg Road
Raeford, NC 28376

ATTN: DAVID R. JOHNSON

**RE: Unauthorized Practice of Law of Lent C. Carr file number 18AP0038**

Dear Attorney Johnson,

In this correspondence you will find a CD that includes recorded telephone conversations from Lent C. Carr and myself. These recordings took place while I was in Wake County Detention Center. The total number of telephone calls are far above 100. In this, I am highlighting a number of telephone logs for your hearing that will point to the causes of my contacting The State Bar as to claim of Lent Carr acting as my Attorney. This position as my Attorney allowed Lent Carr to attain my trust and for him to dupe me into transferring property (by fraud) into his name.

**Exhibit #1:** Lent Carr stated that he had filed a Motion of Dismiss and was making Case litigation on my behalf before a supposed Wake County Superior Court Judge Mobley. Below are the references:

P9-5201-7-**20170516**195214 (begin dialogue at 2:50 time) Mr. Carr stating legal case and that he has even worked in Washington, DC for my cause in this case.

P8-5201-150-**20170516**200845 (begin dialogue at 1:27)

P2-5201-64-**20170517**202612 (begin dialogue at 5:38) speaking of Motion to release me in Mr. Carr's (my attorney's) custody.

P17-5201-45-**20170530**195738 (begin dialogue at 2:06) talking about Judge Mobley and probably cause hearing and other legal matters that he continues representing with me on. Speaking as to his signing me out from the Wake County jail under this Attorney authority. Says me case is pending being dismissed after these proceedings.

P6-5201-137-**20170519**152151 (began dialogue at 3:24) Lent Carr says he's in a conference call with court about getting me signed out.

The following 3 recordings encompass one full day's communication with Lent Carr in reference to my case:

P8-5201-117-**201705255**161128 (began dialogue at 2:13) Lent Carr asked me to call him back. He's just leaving Judge's Chambers.

P11-5201-78-**20170525**193521 (began dialogue at 1:52) Lent Carr says he's to be in Judge's Chambers in the morning; taking about my case and Judge's Chambers and said he was talking to a head DA lady. Lent Carr spoke as to the Obstruction of Justice charges penned against me. Lent Carr stated that he argued in court as to the Obstruction charges. (began dialogue at 9:43-9:57 Lent Carr provides specific legal advice towards my case.

P10-5201-83-**20170525**164124 (began dialogue at 1:48-3:30) Lent Carr says he's sitting in the lobby waiting for an order to come down to sign me out of Wake County Detention Center. (began dialogue at 9:30-11:40) Lent Carr speaks on how he acted out in Court that day.

**Exhibit #2**: Mr. Carr reported that he spoke with my Mother in reference to my case and let her know that he has been in the paperwork. He also notes statements made by other family members to him.

P2-5201-19-**20170529**152128 (began dialogue at 10:44)

**Exhibit #3**: Lent Carr stated that he had began litigation on my behalf in Washington, DC with the Office of Civil Rights on behalf of my case.

P9-5201-7-**20170516**195214 (began dialogue at 2:50)

P5-5201-80-**20170819**153514 (begin dialogue at 2:04-4:41) Lent Carr stated that he's filed documentation on my behalf with the Civil Rights Office. Continued at (5:27) where Lent Carr stating he's going to Washington, DC to the Office of Civil Rights. Starting at 6:50 legal advice in reference to case information, for example failure to appear portion.

**Exhibit #4**: In addition, to acting as an Attorney on my behalf, Lent Carr was able to use his position as an Attorney, working on my case, to gain my trust and subsequently steal property. In his recording, Lent Carr attempted to gain ownership, via transfer via Quitclaim deed of modular buildings (total of 3) that I own located on my Great-Aunts property in Raeford, NC. In this recording you will hear Lent Carr state that he has retained grants that are ready to go in order to help the people of the area except he needs a vehicle (he is referring to the blue Jeep I owned that was parked outside the property) in addition he needed to have access to the modular buildings.

P13-5201-139-**20170531**203537 (began dialogue at 3:52-11:45)

**In this same recording**, Lent Carr as my Attorney and Power of Attorney spoke on paying my back taxes and taking care of my properties until I was released from jail. (began dialogue at 12:39-16:08)

**Exhibit #5**: As my Attorney, Lent Carr made verbal promises to come to the jail and bring my documentation. (began dialogue at 4:00-6:36)

In this same recording, (began dialogue at 6:360 Lent Carr says he's bringing me files to the jail. (began dialogue at 6:40-6:49) says they (meaning he and his law firm) has filed motions on my behalf

**Exhibit #**:  Mr. Carr's conversation as to supposed loan with Wells Fargo Bank where he used my property (which I signed over in his name) in order to attain loan (1 st loan attempt) on my behalf.  This loan was to be used to pay my bond.  This measure was utilized after Mr. Carr (Attorney Carr) could not get the Motion approved for Mr. Carr to sign me out of the County jail under his authority.

P7-5201-140-**20170706**192808  (begin dialogue at 5:26)  Wells Fargo refused to release loan and his legal processes with their Corporate office.

P7-5201-143-**201707300**195356   (begin dialogue at 5:58) conversation as to meeting with Wells Fargo Corporate office on loan disbursement issue.

P10-5201-66-**20170729**103035  (begin dialogue at 1:29)  discussed possible loan of $250,000 from his friend (referred to as Hwy 55) until loan is disbursed the next day.  Mr. Carr references how hard he's been working on my case.

P7-5201-140-**20170729**091513  (begin dialogue at 5:23)  speaking of Wells Fargo Bank loan.  Stating SBI influence in him attaining loan.

P15-5201-120-**20170727**084315 (begin dialogue at 4:53)  speaking of Wells Fargo Bank loan, money not being dispersed at that time.

P11-5201-74-**20170722**214932  (begin dialogue at 5:30) Lent Carr stating that Wells Fargo Bank received the Judge's Order and funds still not dispersed.

P17-5201-2-**20170831**205123  (begin dialogue at 14:14) Lent Carr referencing an internal agreement with Wells Fargo Bank at their Corporate Office in Maryland for loan release and pending lawsuit (if the bank does not follow through).

P7-5201-64-**20170829**203827 (begin dialogue at 5:24) further information on Wells Fargo Loan's release due to SBI involvement.

P10-5201-119-**20170829**105356 (begin dialogue at 1:36)  Lent Carr conveying further information on release of loan funds.

P6-5201-128-**20170829**104847 (begin dialogue at 4:20)  Lent Carr stating meeting with Attorney Walker in reference to Walker's documentation to Wells Fargo in reference to loan lawsuit.

P8-5201-77-**20170827**212445 (begin dialogue at 5:15-6:43)  Lent Carr states all is well with the Wells Fargo lawsuit due to them not releasing loan monies.  Speaking of settlement portion of lawsuit.

in federal court.

P11-5201-80-**20170819**155147  (begin dialogue at 5:36) Lent Carr confirming that he is coming to the Wake County jail for an attorney visit to bring me documentation needed for my case.  Lent Carr stated the he has already filed Motion to dismiss case due to jurisdictional issues.

P11-5201-80-**20170819**155147  this entire recording is damning to Lent Carr's impersonation as an Attorney.

**Exhibit #6:**  Lent Carr stated that SBI (State Bureau of Investigation) Officers (4 of them) came to his office to intimidate him because he was working my case.

P9-5201-55-**20170808**194834

P12-5201-74-**20170819**100658  (begin dialogue at 6:50)  me speaking with Lent Carr in reference to illness due to stress related to 4 SBI Agents coming to his office to intimidate him to stop helping me in my case.

**Exhibit #7:**  Lent Carr even had his wife a part of the scam as she participated in relaying messages from Lent Carr to me.

P7-5201-150**20170808**152519  (began dialogue at 1:45-2:15)

**Exhibit #8:**  One of the many lies of Lent Carr was that he was working on "signing me out" under his Attorney privilege pending trial.  In this recording he speaks of such.

P2-5201-9-**20171015**195437

P15-5201-51-**20170518**214759  Lent Carr stated that he has given the order to the court for my release to him and that I would be residing at my property (one he fraudulently obtained) at 3300 Laurinburg Road, Raeford, NC.  (began dialogue at 6:18-7:15).

Mr. Johnson, If I were to state all the fraudulent actions of Mr. Lent C. Carr to date I would occupy too much time for this matter. In this, I have provided documentation of a few items. I have provided you with the full tape version provided me by Wake County Detention Center of all recorded telephone calls on my account. I imagine Mr. Carr stating that the recorded voice is not his. In that, please refere to the "cdrdata" located on the CD provided, it's the first piece of information. This database provides you with the time and telephone number dialed for that telephone call. I have highlighted the date of the telephone call in this document. These references are easy to access simply look for the correct database; then locate the "P" number then the number after the "5201." If you have any further questions please feel free to contact me at (910) 583-0399.

Sincerely,

*Jannetta Jordan*

Jannetta Jordan, Ph.D.



# The North Carolina State Bar
Authorized Practice Committee

217 E. Edenton Street (27601)
Post Office Box 25908
Raleigh, North Carolina 27611
Telephone (919) 828-4620
Web: www.ncbar.gov

June 18, 2018

Ms. Jannetta Jordan
4160 Laurinburg Road
Raeford, NC 28376

Re: Unauthorized Practice of Law of Lent C. Carr
File number: 18AP0038

Dear Ms. Jordan:

We have opened a file concerning the above-referenced matter.  After the Committee has made a decision, I will notify you of the results.  Please be advised that authorized practice files are considered public and, upon request, individuals are allowed to review the files.

Thank you for bringing this matter to our attention.  Please contact me if you have any questions.

Sincerely,

David R. Johnson
Deputy Counsel

DRJ/lb

date: 10/24/18

Alan S. Hicks, Chair
Matthew W. Smith, Vice-Chair



# The North Carolina State Bar
## Authorized Practice Committee

217 E. Edenton Street (27601)
Post Office Box 25908
Raleigh, North Carolina 27611
Telephone (919) 828-4620
Fax: (919) 821-9168
Web: www.ncbar.gov

November 14, 2018

Mr. Lent C. Carr
3300 Laurinburg Road                                    **LETTER OF CAUTION**
Raeford, NC 28376

Re: Allegation of Unauthorized Practice of Law
File number: 18AP0038

Dear Mr. Carr:

On October 24, 2018, the Authorized Practice Committee of the North Carolina State Bar met and considered the results of its investigation into the above referenced matter as it is charged with doing by N.C. Gen. Stat. § 84-37 and the State Bar's rules and regulations. You were informed of the allegations before the Committee and given an opportunity to respond. You responded and the Committee carefully considered both your response and the other information received by it.

Based upon all of the information available to it, the Committee believes these are the pertinent facts in this matter:

 In late 2016, you met with Janetta Jordan, who was facing criminal charges, at the Wake County jail. You held yourself out as an attorney. You provided her with legal advice and prepared legal documents. Eventually, you convinced Jordan to convey property to you and obtained a power of attorney from her.

In addition, you hold yourself out on the internet as running a business known as "Emmaus Corp. Legal Briefing, Investigative, Judgment Collection, & Research Service Firm of North Carolina." You hold this business out as able to provide legal research and writing services to *pro se* parties. You also hold out that this business has attorneys to provide legal services to others. This business is not registered with the North Carolina Secretary of State.

In response to the Committee's notice to you, you denied that you held yourself out as an attorney to Jordan. You also contend that you prepared the documents as part of a business transaction between you and Jordan. You admit that you are advertising the business, but claim it is part of a corporation you have established that operates as a church.

The North Carolina General Statutes prohibit individuals or entities other than active members of the North Carolina State Bar from practicing law or providing or offering to provide

Alan S. Hicks, Chair
Matthew W. Smith, Vice-Chair

EXHIBIT C 4
(page 2 of 2)

Lent C. Carr
Page 2 of 2

legal services in North Carolina to other persons, firms, or corporations.  The North Carolina General Statutes define "practice law" to include giving legal advice, preparing legal documents such as court pleadings, wills and powers of attorney, and representing parties before courts or other tribunals.  N.C. Gen. Stat. §§ 84-2.1, 4, and 5.  The statutes prohibit individuals other than active members of the North Carolina State Bar from practicing law or providing or offering to provide legal services in North Carolina to other persons, firms, or corporations.  N.C. Gen. Stat. § 84-4.  The statutes also prohibit corporations, other than law firms and certain tax-exempt corporations, from providing legal services to other persons, firms, or corporations even if those services are performed by North Carolina licensed attorneys.  N.C. Gen. Stat. §§ 84-5 and 5.1; *State ex rel. Seawell v. Carolina Motor Club, Inc.,* 209 N.C. 624, 184 S.E. 540 (1936)*; Gardner v. The North Carolina State Bar,* 316 N.C. 285, 341 S.E.2d 517 (1986).  Emmaus Puritan Apostolic Baptist Church, Inc. is not a corporation authorized to practice law under those statutes.  The Committee concluded that there is probable cause to believe that the Center's activities violated the unauthorized practice of law statutes.  Accordingly, it voted to issue this Letter of Caution.

The Committee expects that you will stop engaging in those activities that violate the unauthorized practice of law statutes as a result of this Letter of Caution.  Please respond with any steps you have taken or plan to take in response to this letter by November 20, 2018.

The Committee's opinion expressed herein is not a legal determination.  The State Bar does not have the authority to order you to discontinue your current practices.  Only a court may determine that you have violated, or are violating, any law, and, if appropriate, impose a remedy or penalty for such violation. The State Bar has authority to file a lawsuit against you for injunctive relief, but the Committee is using its discretion not to pursue any proceedings for injunction or other action at this time.  The Committee reserves the right to re-visit your conduct in the future in its discretion should you elect to continue it.

Thank you for your cooperation in this matter.  Please contact the Committee's counsel, David R. Johnson or Joshua T. Walthall, if you have any questions.

Sincerely,

Alan S. Hicks, Chair
Authorized Practice Committee

ASH/lb

# Emmaus Cathedral Church

an extension of Emmaus Puritan Apostolic Baptist Church, Inc.

3300 Laurinburg Road, Raeford, North Carolina 28376

Office#: (919)-709-7493      Office#: (919)-417-6768

walkingwithchristtoemmaus@gmail.com

    

*Heart for The* **HARVEST**
The Evangelism Ministry of Emmaus Cathedral GPACTB International Church

November 19, 2018                    **Sent Via Certified Mail, Hand Delivery and Email**

**To:** David R. Johnson, Esquire &

THE NORTH CAROLINA STATE BAR'S

AUTHORIZED PRACTICE COMMITTEE

208 Fayetteville Street Mall

Raleigh, North Carolina 27611

**RE: Letter for Correctness to The North Carolina State Bar's "UPL Committee's" LETTER
OF CAUTION Issued 14 November 2018 File # 18AP0038**

Dear Mr. Johnson, and the Authorized Practice Committee:

Please be advised that the herein "Letter for Correctness" is being submitted to your direct attention regarding this Board's "LETTER OF CAUTION" issued 14 November 2018. Said Letter of Caution seem to have been drafted in error and in complete contravention to the unanimous vote of the Authorized Practice Committee as was held on 24 October 2018, where I was present and privy to the witnessing of their respective votes on the matter.

In fact, the drafted Letter of Caution is incompatible to that Committee's vote whereas, if you recall during your recitation of the allegations induced by Jannetta Jordan, the initial complainant, who did not even think it important enough to even attend the scheduled hearing; I attempted to address my factual concerns about her baseless allegations, but was cut off and not permitted to go any further therewith as one of the Board Members did chime in and reminded you that the Authorized Practice Committee had previously took the matter under advisement during a prior closed meeting and had decided in their opinion that Jordan's claims should not be carried any further on merit basis in the closed door session had. Thus that Committee had only agreed to carry over the alleged UPL matter as relating to my Corporation's website contents.

As stated above, the 14 November 2018, Letter of Caution is inconsistent to that of The Authorized Practice Committee's opinion and vote had on 24 October 2018. As a matter of fact, the above- mentioned Member of the Authorized Practice Committee who spoke out in that final Hearing as a reminder to you Mr. Johnson, that the Board had previously voted to forego hearing as a part of the UPL issues up for vote the Jannetta Jordan allegation, coupled by other members thereof acquiesce and supporting of his objection, is clearly indicative that the drafter of the referenced LETTER OF CAUTION may have inadvertently placed the non-board-voted expressed opinion in error in the 14 November 2018, Letter of Caution as authored.

1

Therefore, I am hereby and respectfully requesting that the true and correct vote of the Authorized Practice Committee's opinion decision be adhered to and corrected in the first instance to reflect the quorum's actual opinion and vote under File # 18AP0038, and for such and further relief as is proper and just under circumstance.

Thank you in advance for your time, consideration and support in this most important matter. should you have any questions or would like any additional information, please do not hesitate to contact me in the first instance at (919) 709-7493 or alternatively at (919)-417-6768.

Sincerely,

Emmaus Puritan Apostolic Baptist Church, Inc.

By: _____

Lent C. Carr, II,

Chief Executive Officer of Operation/

Senior Pastor/Presiding Prelate

Lc/c



**The North Carolina State Bar**
Authorized Practice Committee

217 E. Edenton Street (27601)
Post Office Box 25908
Raleigh, North Carolina 27611
Telephone (919) 828-4620
Web: www.ncbar.gov

November 27, 2018

Mr. Lent C. Carr, II
3300 Laurinburg Road
Raeford, North Carolina 28376

Re: **Allegation of Unauthorized Practice of Law**
**File number: 18AP0038**

Dear Mr. Carr:

This office is in receipt of your letter of November 19, 2018 in response to the Committee's Letter of Caution.

I have reviewed the minutes of the meeting and consulted with the Vice-Chair of the Committee, who presided over the October meeting. Your recollection of the Committee's motion and vote is inaccurate. There was no prior determination of the allegations by Ms. Jordan in a closed session or otherwise. There is no basis for any correction of the Letter of Caution.

Sincerely,

David R. Johnson
Deputy Counsel

/drj

Alan S. Hicks, Chair

Additional Proof of Lent Carr representing himself to Jannetta Jordan as an Attorney and fraudulently attaining property at 3300 Laurinburg Road, Raeford, NC 28376

May 21, 2019

To Whom It May Concern,

My name is Eleanor Kirkland.  I was the original Power of Attorney for Ms. Jannetta Jordan.  In this capacity, I was responsible for upkeep of her 4 homes (3300 Laurinburg Road, Raeford, NC; 521 Gatlin Farm Rd., Raeford, NC; 4160 Laurinburg Road, Raeford, NC; 1302 Saltwell Place, Fayetteville, NC).  Ms. Jordan has informed me on the case against Mr. Carr.  I have personal information as to the case.  I AM willing to testify to what I know if necessary.

I have had personal contact with Mr. Carr.  He came to my daycare located in Raeford, NC.  At that time, he presented himself to me as Dr. Lent Carr.  He said that he was Ms. Jordan's Attorney.  He said that Ms. Jordan had given him Power of Attorney for him to manage all her properties.  I had a long conversation with Mr. Carr that day.  Mr. Carr followed that face to face meeting up with a letter.    I kept notes on my interactions with Mr. Carr and I will refer to them as needed.  I am attaching a copy of both the envelope and the letter.  Also, for months Mr. Carr received rent money from my employee who was renting Ms. Jordan's house on Gatlin Farm Rd.  My employee was so afraid of Mr. Carr that she asked me to be the middle man and give him the rent.  I spoke with Ms. Jordan about her receiving the rent money and she stated that Mr. Carr did tell her that there was a tenant in the Gatlin Farm Rd. house but he told her that the lady left and did not pay any rent.  He lied because I gave him my employees rent money on the 1st of each month.

If you need any further information please feel free to contact me.  Ms. Jordan has my contact information.


Sincerely,


Eleanor Kirkland

*Eleanor Kirkland*

EXHIBIT D2
(page 1 of 2)

EMAUS CORP. LEGAL
BREIFING FIRM OF NC
P.O.BOX 193
RALEIGH, NC 27611

RALEIGH NC 276
Research Triangle Region
23 FEB 2017 PM 1 1

Eleanor Kirkland
602 Clifford Ave.
Fayettville, NC 28314

28314-205102

copy of hide.

**Notice to Terminate Property Management Agreement/Power-of-attorney**

**TO:** Eleanor Kirkland
602 Clifford Ave.
Fayetteville, N.C. 28314

**FROM:** Jennetta Jordan,
C/o Lent C. Carr, II,
Emmaus Corp. Property Management
Post Office Box 27193
Raleigh, N.C. 27611

PROPERTY ADDRESSES: 571 Gatlin Farm Road, Raeford, North Carolina 28376; 4160 Laurinburg Road, Raeford, North Carolina 28376, and 3300 Laurinburg Road, Raeford, North Carolina 28376

Dear Ms. Kirkland,

Please take NOTICE effective immediately, that the above named property owner, Jannetta Jordan, by and through her duly appointed Power-of-Attorney/Property Manager, Lent C. Carr, II, do hereby terminate and nullify any and all duties and/or responsibilities previously granted you in the management of the above-described properties listed above, including but not limited to any further management of said properties, rent collections, and all matters relating to each itemized residential premises etc. Further, you are noticed that pursuant to North Carolina General Statutes, and other applicable laws that all services previously granted you in accordance to Ms. Jannetta Jordan's grant naming you as her power-of-attorney is also and effectively and immediately nullified according to law and the expressed desire of Ms. Jordan. Thus, all services rendered should cease to exist accordingly.

Thank you for your amicable services. However, please mail to the attention of Lent C. Carr, II, all residential keys, deeds of record, other related documentations in your possession, and any other pertinent information respecting this matter.

I hereby issue this immediate notice to terminate the Management Agreement between myself and Eleanor Kirkland. My newly elected Property Manager, Lent C. Carr, II, will communicate notice of such action to the Tenant(s), and notify Tenant(s) of the address for remittance of future rent and other payments:

Address to send payments: C/o Lent C. Carr, II, Post Office Box 27193, Raleigh, North Carolina 27611. Page 1 of 2  _JJ._  Owner's Initials Page 2 of 2 Address for Tenant (s) to Forward Payment & Maintenance Request/Account Information: C/o Lent C. Carr, II, Post Office Box 27193, Raleigh, North Carolina 27611 or Tenant may call (919)-417-6768.

I understand by terminating the Management Agreement, any existing Lease Agreement between current Tenant(s) and Eleanor Kirkland, will become void immediately after the issuance of this notice, and that all new arrangements and communications with the Tenant(s) will become the responsibility of the Owner's Property Management Agency, or their designated Agent at that time. I understand that Eleanor Kirkland; effective immediately after the issuance of this notice; will no longer be responsible for the collection of rent, (beginning on the 1st day of February, 2017, nor will Eleanor Kirkland, be responsible for any responsibilities or obligations formerly in force under the terminated Management Agreement.

Sincerely,

OWNER: _Jannetta Jordan_ 2/3/17    PROPERTY MANAGER: _Lent C. Carr II_ 2/3/17
      Jannetta Jordan                      Lent C. Carr, II

**SO DECREED AND RATIFIED THIS THE 2 DAY OF JANUARY, 2017.**

State of __NC__
County of __Wake__
This instrument was acknowledged before me
on _3_ day of _2_, 2017 by _Jannetta Jordan_

_William Thomas_
Notary Public's Signature
My Commission Expires: _3-11-2018_

[Notary Seal: WILLIAM THOMAS NOTARY PUBLIC WAKE COUNTY, NC]

To Whom It May Concern,

My name is Ja'Misha Jordan. I am the oldest Daughter of Jannetta Jordan. I had a number of telephone conversations with Mr. Carr when my Mother was in jail. I only made contact with Mr. Carr when I spoke with my Mother and she asked me to call him for updates on her case. My Mother told me that Mr. Carr and his legal team were taking over her case for her.

**December 27, 2016**-spoke with Mr. Carr to see if he can get Court transcripts for my Mother. He said he could get them and each transcript would cost $150.00 each, plus an extra $25.00 for rush fee.

**January 4, 2017**- spoke with my Grandma and she said she mailed Mr. Carr $175.00. This would cover him getting one transcript and she will be getting the rest of the money later that week and will mail that to him.

**January 10, 2017**- spoke with Mr. Carr and he said he received the entire $525.00. He said he would be going to the Courthouse and having a rush placed on the 3 Court transcripts orders for my Mother.

**February 6, 2017**-spoke to my Mother in the morning, she told me that Mr. Carr was going to get a loan using her house at 3300 Laurinburg Road as collateral. She said she had already Quitclaim Deeded the house to Mr. Carr and gave him a Power of Attorney. Spoke with Mr. Carr that evening to find out what he was going to do to help my Mother. Mr. Carr went through a lot of talking about my Mother's case. He said she was innocent and the Prosecutor was vigorously going after her for her to take a plea to something she did not do because he has no case. Mr. Carr said although he was my Mother's Attorney he was not taking the lead in the case. He said he was working the case behind the scenes. He said that a Mr. Walker will be the lead Attorney. Mr. Carr said that all conversations will be going through him. He said that he had a team of Investigators with his firm who are going to pick my Mother's case apart and prove her innocence. Mr. Carr said that he had visited my Mother in jail and that she was holding up well. He said that my Mother had already signed him as her Power of Attorney and the deed to her house. He said that he had a perfect credit score and he was going to use his credit and my Mother's big house as collateral to get a loan with his bank, Wells Fargo, and get her out of jail. Mr. Carr said he was going to get a loan for $250,000.00. He said he was going to use this money to bond my Mother out of jail and pay some money to his law firm for their services.

**July 14, 2017**- spoke with Mr. Carr. He said the $250,000.00 loan was approved from Wells Fargo bank. He said they had put the money in his account but he could not access it. He said he was going to call the bank in the morning and see what was going on with it. He said my Mother will be home in a few days at the latest.

**July 15, 2017**- spoke with Mr. Carr to see what was going on with the loan money. He said he went to the bank to find 2 SBI men waiting for him. He said they had a Judge's Order for a 48 hours hold on the check. Mr. Carr said that he and Attorney Walker were working on this.

**July 17, 2017**-spoke with Mr. Carr he said that the SBI Attorney came to his Office that day and issued him a Summons to Appear in Court. Mr. Carr said he had to go before a Judge Ned Magum the next day. Mr. Carr said they were disputing the house and they continue to have a hold on his bank accounts too and not allowing him to withdraw the money he borrowed to get my Mother out of jail on bail.

**September 4, 2017**- spoke with Mr. Carr he said that Attorney Walker had brought him papers from the Wells Fargo bank. He said the bank should release the money within the week and as soon as he got the money he was going straight to the jail and bond my Mother out.

**September 27, 2017**-spoke with Mr. Carr today he said that the bank is still refusing to release the loan money. Mr. Carr said he is working with another bank that he has a great relationship with. He said the bank name was **Heart**. Mr. Carr said something about the bank did a property search on my Mother's house and that process had been completed by the bank already. He said it should not take long for the loan to be finalized.

**October 17, 2017**- spoke with Mr. Carr today. He said the loan with the bank was going well. He said the bank was waiting for him to come in and sign some more papers. He said all these obstacles in my Mother's case keeps him so busy that he just has not had to time to go by the bank. Mr. Carr said that his Investigators received some behind the scenes information. He said his Investigators told him and Attorney Walker that the Prosecutor is working quickly to get a Judge's Order to take my Mother's properties and sell them to give the money back to the State. I asked him how could they do something like this as my Mother has not been convicted of anything. Mr. Carr said they can do whatever they want, you see they got her locked up under this high bond. Mr. Carr said he spoke with my Mother and she is in the process of signing her other houses over to him. Mr. Carr said since he is behind the scenes he can cover her assets. Mr. Carr said that he is using my Mother's big house for the collateral on the bank loan. Mr. Carr said he has ran into this type of government corruption so much that nothing amazes him anymore. He said that he has done this before for another Client and this strategy works. He said he explained everything to my Mother and she agreed to give him the Quitclaim deed over her other properties so that the Prosecutor cannot use the system to take her stuff. He said as soon as the case is over he would immediately return my Mother's houses back to her. He said the process was quick, easy and simple. He told me not to worry that he was working overtime to make sure the State did not take my Mother's things she's worked so hard for. He said my Mother is innocent and she is strong. He told me not to worry about anything because God is on my Mother's side in this.

These are all the conversations I had with Mr. Carr. I will testify to all these conversations.

Ja'Misha Jordan

**September 4, 2017-** spoke with Mr. Carr he said that Attorney Walker had brought him papers from the Wells Fargo bank. He said the bank should release the money within the week and as soon as he got the money he was going straight to the jail and bond my Mother out.

**September 27, 2017-**spoke with Mr. Carr today he said that the bank is still refusing to release the loan money. Mr. Carr said he is working with another bank that he has a great relationship with. He said the bank name was **Heart**. Mr. Carr said something about the bank did a property search on my Mother's house and that process had been completed by the bank already. He said it should not take long for the loan to be finalized.

**October 17, 2017-** spoke with Mr. Carr today. He said the loan with the bank was going well. He said the bank was waiting for him to come in and sign some more papers. He said all these obstacles in my Mother's case keeps him so busy that he just has not had to time to go by the bank. Mr. Carr said that his Investigators received some behind the scenes information. He said his Investigators told him and Attorney Walker that the Prosecutor is working quickly to get a Judge's Order to take my Mother's properties and sell them to give the money back to the State. I asked him how could they do something like this as my Mother has not been convicted of anything. Mr. Carr said they can do whatever they want, you see they got her locked up under this high bond. Mr. Carr said he spoke with my Mother and she is in the process of signing her other houses over to him. Mr. Carr said since he is behind the scenes he can cover her assets. Mr. Carr said that he is using my Mother's big house for the collateral on the bank loan. Mr. Carr said he has ran into this type of government corruption so much that nothing amazes him anymore. He said that he has done this before for another Client and this strategy works. He said he explained everything to my Mother and she agreed to give him the Quitclaim deed over her other properties so that the Prosecutor cannot use the system to take her stuff. He said as soon as the case is over he would immediately return my Mother's houses back to her. He said the process was quick, easy and simple. He told me not to worry that he was working overtime to make sure the State did not take my Mother's things she's worked so hard for. He said my Mother is innocent and she is strong. He told me not to worry about anything because God is on my Mother's side in this.

These are all the conversations I had with Mr. Carr. I will testify to all these conversations.

*J. Jordan*

Ja'Misha Jordan

EXHIBIT D4

5/21/2019

My name is Ja'lani Jordan. Jannetta Jordan is my mother. First off, I would like to say that Mr. Lont Carr did tell me that he was my mother's attorney. When I was living with my grandmother, he would come over and even call us on the phone to tell us about my mother and her case. He also discussed with me that whenever she got ~~released~~ released from jail she would come back to the house that she gave him power of attorney over and he even said that he would buy her a steak. There was an incident where my car got repossessed and he said he was going to go to his bank and take a loan out so he can get it back for me. I hope this helps. If you want to ask me any questions please contact my mother.

Thank you,

Ja'lani Jordan

*Ja'lani Jordan*

Current open Criminal Case in Hoke County, NC Courts as to Lent Carr and writing a fraudulent check for back taxes for the property 3300 Laurinburg Road, Raeford, NC 28376 on Jannetta Jordan's old business account whereby he initially claimed Jannetta Jordan told him to write the check.  Lent Carr soon recanted that statement to the Lead Investigator whereby he confirmed that he found the check in the home of 3300 Laurinburg Road, Raeford, NC 28376 and wrote the check without the consent of Jannetta Jordan.

Dr. Jannetta Jordan
Jordan Counseling & Consulting Service
910-527-2534

1122

66-112/531

PAY TO THE
ORDER OF  Hoke County Tax Office

October 3, 2017    DATE

$ 9,050.00

Nine Thousand Fifty Dollars 01/100    DOLLARS

BRANCH BANKING AND TRUST COMPANY
1-800-BANK BBT  BBT.com

BB&T

Security
Features
Details on
Back.

MP

FOR  Taxes Owed

Jannetta Jordan

Harland Clarke

EXHIBIT E 1



*EXHIBIT E2*
*(page 1 of 4)*

**Updates**

On November 7, 2017, Lent Carr, II sent me the following:

*Thank you for the return email received last week regarding the piecemeal report as reported by the Raeford Police Department. As promised, below is my official statement and facts surrounding the lopsided report that my Attorneys are sure will be dismissed in the coming weeks. There's only a few things I think is prudent as far as highlighting at this juncture per my Attorneys' direction. they are as follows:*

*1. The check in question that was presented to the Hoke County Tax Office was presented at the direct instruction of my client Jannetta Jordan. She had previously given me supervisory authority over sparse tangible property of hers that was not removed or stored by her previous Power of Attorney. That included the checking account in which she stated was supported by funds to cover said taxes in which the check was presented and endorsed for. "I had no reason to believe that the funds were not supported as Ms. Jordan had affirmed to me on numerous occasions that she had rainy day monies in remote Banks here and elsewhere. Furthermore, Jordan had been for a number of years a licence Psychologist with Offices in Hoke County, Cumberland County and Wake County respectfully, along with other business ventures as was told me."*

*2. Moreover, upon her own freewill and desire, Jordan employed the Services of Emmaus Corp. Legal/Domestic Briefing, Investigative, and collection, and research Service Firm of North Carolina, where Carr, is the Supervising Partner for said Service Firm. Not to mention Jordan's employment contract for said firm to act under law, and on her behalf as her sole Property Manager for multiple properties, including the Gatlin Farm Road, and the 4160 Laurinburg Road Properties whereby the vast amount of the check funds were to cover at a tune of $6,000.00, plus, in contrast to that of what was owed following Mr. Carr's diligent payments made to the tax office for taxes deliquent as a matter of Jordan's failure to pay taxes for the fiscal years of 2014, 2015 and 2016. To date, Carr has personally paid out of his own funds to the Tax Office approx. over $10,000, with merely owing a small amount of $3,900.00. This is why any false allegation of his presenting a check for forgery, uttery and gainful purposes could never be supported by the Greater weight of the evidence, nor would it make sense when Carr has paid off Jordan's tax debts to the smaller amount of $3,000.00 dollars owed.*

*3. Further, without having the benefit and knowledge that Carr possessed and was duly granted legal Power of Attorney to "...make deposits and withdrawals, negotiate or ENDORSE ANY CHECKS OR OTHER INSTRUMENTS with respect to any such accounts..." (See, Pg. 1, Para. 7, Durable Power of Attorney) and belonging to Jordan, a legal Durable Power of Attorney backed by the North Carolina General Statutes, the Raeford Police Department jumped the gun with its prepared, and fatally flawed charging instrument, even after being voluntarily presented the same at its precinct following the arrest of Carr. The Power of Attorney Contract was entered into on February 3, 2017, whereby Jordan did legally sign, and a Notary Public of the State of North Carolina contracting with the Wake County Jail, where Jordan is awaiting trial for Medicaid Fraud, Obtaining Property under False Pretense, Obstructing Justice amongst other charges, swore under oath before William Thomas, Notary, on the same Day of February 3, 2017, seal stamped. Now, for the Raeford Police to have been presented said power of*

EXHIBIT E2
(page 2 of 4)

attorney information, coupled by the Property Management Contract, at the very least, Carr should have never been charged with forgery of a check nor any other charge for that matter. Others similarly situated, who endorse, present for payment checks on a grantor's behalf, only to later be apprised that such was not supported by funds are almost never treated arbitrarily as has been towards this Pastor of our Community, Lent Carr. If anything, the Detective, Detective P. Noce, leading this egregious reprisal campaign (as believed to be the case by Carr) on the legal side of this matter, that is however, outside of what Carr believes to be political pressure and influence, should at the very least halted the proceedings and done a more comprehensive investigation that would have shown that the Victim in this quagmire was not Jordan, but rather Carr who have over the past year taken on multiple battles for Jordan, including back taxes owed in which she never informed him about from the outset. Not only that, under circumstances as that of the check presented to the tax office in good faith on the part of Carr, even if the Detective felt pressured by other powers that be to arbitrarily charge me with a non-sequitur crime (since there is an actual power of attorney) then the charge should have been nothing more than a simple worthless check, since no set of facts can even remotely be proved of forgery, uttery, publishing, and as the charging instrument has so misled the general public to believe that Carr had somehow generated a false currency instrument as those nefarious who counterfeit.

4. As relating to the tax matter, there is a Judgment Order that has been duly and legally entered by the Clerk of Superior Court entitled "CERTIFICATE OF PAYMENT/SATISFACTION OF JUDGMENT CREDITOR (PAYMENT IN FULL), filed by the Tax Office, and ratified, stamped and Sworn, specifically stating that there are no further taxes owed on the property at 3300 Laurinburg Road. Furthermore, Carr's Deed of Transfer has likewise been filed, stamped by the Tax Office stating "This certifies that pin: 394130001005; is free of any deliquent ad valorem Tax liens charged to the Hoke County Tax Collector…" Said Deed was filed with the Register of Deeds Office on October 4, 2017. In accordance with GS105-357 Payment of Taxes, any and all prior taxes owed are now moot. The Law specifically states in pertinent part: "If the tax collector accepts a check or electronic payment in payment of taxes on realo property and issues the receipt, and the check is later returned unpaid or the electronic payment invoice is not honored by issuer, the taxing unit's lien for taxes on the real property SHALL BE INFERIOR TO THE RIGHTS OF PURCHASERS FOR VALUE AND OF PERSONS ACQUIRING LIENS OF RECORD for value if the purchasers or lienholders acquire their rights in good faith…" GS 105-357 This among other political matters is what Is believe, in part was the motive of the gun hoe charging and arresting.

Finally, Pg. 4, Para. 6, of the Lawfully entered Durable Power of Attorney specifically states: "My Agent shall not be liable for any loss that results from a judgment error that was made in good faith…" Because Jordan instructed Carr to specifically pay back taxes on her two properties (being the one who gain the most) and the one property acquired whereby He was at the end of completing of just $3000.00, and because he had no knowledge that the check was not supported by funds, something the Tax Office should have done their dudiligence in verifying, and because at all times He acted in good faith representing the best interest of his client Jordan (Pro-Bono), her actions should have never been weighed upon Carr wrongfully seeing as Carr merely acted in accordance to NCGS Power of Attorney dictates as is granted others.

EXHIBIT E2
(page 3 & 4)

Carr, II has had previous brushes with the law.

:

*Federal marshals took a Raleigh City Council candidate into custody Thursday after he was sentenced to seven months in prison for violating his parole on a 2000 fraud conviction.*

*Lent Carr II, 37, acknowledged that he violated the terms of his parole but told Senior U.S. District Judge Malcolm Howard that he needed to stay out of prison to attend to his ailing mother and to campaign for the District C seat on the City Council before the October election.*

*Carr pleaded guilty in April 2000 to federal arson and bank and mail fraud charges and spent several years in prison. An appeals court later vacated the arson plea due to a technicality.*

*Howard found that he violated his parole by pleading guilty in February to simple assault and by failing to meet with his parole officer or with a mental health counselor.*

*Defense attorney Susan Umstead said the assault case was a domestic dispute involving Carr's stepson, and since Carr has separated from his wife, he no longer has contact with the stepson.*

*Carr felt compelled to assault the stepson, Umstead said, because he thought the boy was threatening Carr's mother, who has numerous health problems and is in a wheelchair.*

*A federal prosecutor noted that Carr bit the boy during the altercation.*

*Carr "just dropped the ball" on meeting with the parole officer and mental health counselor, Umstead said, noting that Carr also has health problems, including a personality disorder.*

*Carr told Howard that he has turned his life around since leaving prison. He now does community outreach and works with other ex-convicts, he said.*

*Prosecutors expressed concerns that Carr has been soliciting donations to his campaign by misrepresenting himself to the public. They said it was clear that the probation office could not help him any further.*

*Cherie Poucher, executive director of the Wake County Board of Elections, said Carr's name would remain listed as a Democrat on the ballot unless a voter in District C files a complaint with the board within 10 days.*

*A WRAL News investigation in May found holes in Carr's campaign resume.*

*The biography on his campaign website notes he has business administration and advanced career degrees from Cumberland County College in New Jersey. A school spokeswoman told WRAL News that Carr was enrolled but there's no record of any degree.*

He also refers to himself as "Dr. Lent Carr," citing an honorary doctorate from Amherst Theological Seminary in Madison Heights, Va. An Amherst representative said the seminary is a "correspondence Christian education program that deals with prisons," and Director Oscar Blanchard said Carr completed a basic Bible class, but there's no record of any doctorate.

Carr's profile on LinkedIn.com touts his experience as a law clerk at a federal correctional institute from 1996 to 2006, in which he supervised 21 employees. However, it doesn't mention that he was an inmate at the time. He was released from prison in January 2009.

His Facebook profile lists an MBA from Duke University, but it misspells the name of the Fuqua School of Business. It also says he graduated from Fayetteville State University in 1996, but a spokesman said the university has no record of him ever attending the school.

In addition to his federal convictions, Carr has state convictions for obtaining property by false pretenses and passing worthless checks.

# Lent Carr's History of Fraudulent Acts

U.S. Court of Appeals, 4th Circuit vs. Lent Christopher Carr, II

Guilty of mail fraud and bank fraud an attempt to seek prison stay on house arrest due to physical impairment "Carr's HIV diagnosis, noting that his probable life expectancy was only 4-5 years."

2001 Decision

EXHIBIT F1



2001

271 F.3d 172 (4th Cir. 2001)

UNITED STATES OF AMERICA, Plaintiff-Appellee,

v.

LENT CHRISTOPHER CARR, II, Defendant-Appellant.

No. 00-4345

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

Argued: September 27, 2001

Decided: November 5, 2001

Appeal from the United States District Court for the Eastern District of North Carolina, at Greenville. Malcolm J. Howard, District Judge.

(CR-99-30)

COUNSEL ARGUED: Terry F. Rose, Smithfield, North Carolina, for Appellant. Banumathi Rangarajan, Assistant United States Attorney, Raleigh, North Carolina, for Appellee. ON BRIEF: Janice McKenzie Cole, United States Attorney, Anne M. Hayes, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

Before MOTZ, KING, and GREGORY, Circuit Judges.

Dismissed in part and vacated and remanded in part by published opinion. Judge King wrote the opinion, in which Judge Motz and Judge Gregory joined.

OPINION

KING, Circuit Judge:

Advertisement

1

Appellant Lent Christopher Carr, II, was convicted and sentenced on his pleas of guilty to maliciously damaging and destroying a building used in interstate commerce by means of fire, in violation of 18 U.S.C. S 844(i) (Count One), conspiracy to commit mail fraud, in violation of 18 U.S.C. S 371 (Count Five), and bank fraud, prohibited by 18 U.S.C. S 1344 (Count Six). There are two aspects to his appeal. Carr first challenges his 125-month sentence, consisting of 125 months each on Counts One and Six and 60 months on Count Five, all to run concurrently. He alleges that the district court failed to recognize its authority to depart based on his physical condition, U.S. Sentencing Guidelines Manual S 5H1.4 (1998), and abused its discretion in declining to depart. Second, Carr challenges his S 844(i) conviction in light of the Supreme Court's decision in Jones v. United States, 529 U.S. 848 (2000). As explained below, we dismiss the appeal of the court's decision not to depart, but we vacate Carr's conviction on Count One and remand for further Rule 11 proceedings on the Jones issue.

I.

A.

2

In 1998, Carr applied for a fire insurance policy for a mobile home in Greenville, North Carolina, which served as a residence and as a place of worship known as the World Harvest Oasis Temple of Praise Church. Five days after the insurance policy became effective, Carr reported that the mobile home had been totally destroyed by fire. Investigators discovered the origin of the fire to be a cabinet near the stove, and concluded that the fire had been started by the application and ignition of gasoline.

3

Carr and his wife Davina thereafter made insurance claims for several items of value, including items that had been repossessed from them, were never purchased by them, and were obtained from merchants under false pretenses, as well as items that were grossly overvalued. Carr also met with witnesses in order to "get their stories

*Wife cited being pressured by her husband.*

straight." J.A. 158. <u>Those who supported Carr's version of events were to get a share of the insurance proceeds.</u> ** <u>Davina Carr later admitted that she had lied to an investigating grand jury under pressure from her husband.</u>

B.

4

Carr was indicted in the Eastern District of North Carolina in June 1999, and again by superseding indictment in October 1999, for, inter alia, setting fire to real property used in interstate commerce, in violation of 18 U.S.C. S 844(i). Pursuant to a plea agreement, he entered a plea of guilty to this charge as well as to the charges of bank fraud and mail fraud, and the remaining counts of the superseding indictment were dismissed.

5



*this hearing took place in 2000 (17 yrs. ago) he already was diagnosed w/ HIV and diagnosis w/ AIDS.*

At Carr's sentencing hearing on April 17, 2000, defense counsel sought a downward departure based on extraordinary physical impairment, i.e., <u>Carr's AIDS diagnosis</u>, noting that <u>his probable life expectancy was only four or five years.</u> The court requested Fourth Circuit authority to support an adjustment for AIDS, but his counsel presented none. In response, the Government contended that the prison system could handle Carr's illness. The court then denied the downward departure and sentenced Carr to a total of 125 months' imprisonment.

II.

6

A district court's decision not to depart from the Sentencing Guidelines is not reviewable unless the court mistakenly believed that it lacked authority to depart. See United States v. Hall, *977 F.2d 861*, 863 (4th Cir. 1992). According to Sentencing Guideline S 5H1.4, physical condition or appearance . . . is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range. However, an extraordinary physical impairment may be a reason to impose a sentence below the applicable guideline range; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.

7

USSG S 5H1.4. In this case, the court had to decide whether Carr's diagnosis was an extraordinary impairment warranting departure under S 5H1.4. The example given by the Guideline, i.e., the efficiency of home detention versus prison, shows that assessing whether the Bureau of Prisons could adequately care for an individual with this condition is relevant under the Guideline.

Advertisement

8

The court carefully ascertained that there was no authority in this circuit requiring departure, and observed that it was "not inclined to grant the Defendant's motion."*1* It is clear that the court understood its ability to depart, but did not find the presence of an extraordinary factor warranting departure. Because the court was under no misperception as to its authority, its refusal to depart is not subject to appellate review. United States v. Edwards, *188 F.3d 230*, 238 (4th Cir. 1999), cert. denied, 528 U.S. 1130 (2000). We therefore may not disturb its ruling on this matter, and we must dismiss this portion of the appeal.

III.

9

Carr's challenge to his S 844(i) conviction presents us with three issues, one more difficult than the others. Section 844(i) of Title 18 requires that the building damaged or destroyed by fire or explosive was used in interstate commerce or in an activity affecting interstate commerce.*2* Our analysis of the interstate commerce element is informed by the Supreme Court's recent decision in Jones v. United States, *529 U.S. 848*, 850-51 (2000), in which the Court held that "an owner-occupied residence not used for any commercial purpose does not qualify as property `used in' commerce or commerce-affecting activity; arson of such a dwelling, therefore, is not subject to federal prosecution under S 844(i)." The building must be actively employed "for commercial purposes and not merely a passive, passing or past connection to commerce." Id. at 855. The Court determined that such slight connections with interstate commerce as receiving natural gas, a mortgage, or an insurance

policy from outside the state are insufficient to bring a residence within the scope of S 844(i). Id. at 856; see also United States v. Rea, 223 F.3d 741, 744 (8th Cir. 2000) (vacating conviction for arson of church annex in light of Jones and remanding for fact-finding and determination of whether building was used in commerce as required by S 844(i)).3

10

Carr asserts that Jones error exists here, and makes the following contentions based on the Jones decision: (1) that Count One of the superseding indictment is fatally flawed and fails to properly charge a S 844(i) offense; (2) that the court lacks subject matter jurisdiction due to failure to prove the "jurisdictional" interstate commerce element; and (3) that there was an insufficient factual basis for the court to accept his guilty plea. We will address each of these contentions in turn.

A.

11

The Government maintains, and we agree, that Count One of the superseding indictment sufficiently alleges a violation of S 844(i), because it specifically asserts that the building Carr burned was used in interstate commerce.4 In order to sustain a challenge to Count One, Carr is obliged to demonstrate that the indictment does not, by any reasonable construction, charge the offense for which he was convicted. Hayle v. United States, 815 F.2d 879, 881-82 (2d Cir. 1987). Carr entered a guilty plea to Count One, and the interstate commerce element of S 844(i) was clearly and properly alleged therein; thus this challenge to Count One must fail.

B.

12

Carr next contends that because the interstate commerce element is "jurisdictional," the federal courts lack subject matter jurisdiction over his case if the interstate commerce element was not proven. This part of the Jones claim also must fail, however, because the "jurisdictional element" is merely one element of the criminal activity proscribed by S 844(i), and whether it is demonstrated in an individual circumstance does not affect "a court's constitutional or statutory power to adjudicate a case." United States v. Beck, 250 F.3d 1163, 1165 (8th Cir. 2001) (quoting United States v. Martin, 147 F.3d 529, 531-32 (7th Cir. 1998), and citing United States v. Rea, 169 F.3d 1111, 1113 (8th Cir. 1999), vacated and remanded on other grounds, 223 F.3d 741 (8th Cir. 2000)). The interstate commerce element of S 844(i) implicates the power of Congress to regulate the conduct at issue, not the jurisdiction of the court to hear a particular case. See, e.g., United States v. Riddle, 249 F.3d 529, 536 (6th Cir. 2001). After a judgment of conviction is validly entered on a guilty plea, a defendant cannot challenge the interstate commerce prong of S 844(i) as "jurisdictional," because such a challenge merely contests the sufficiency of the evidence supporting that element of the offense. See id. ("[A] claim of an insufficient connection to interstate commerce is a challenge to one of the elements of the government's case and is therefore considered a claim about the sufficiency of the evidence."). The question therefore becomes whether the judgment of conviction on Count One was validly entered.5

C.

13

This brings us to Carr's third Jones claim, and the nub of this case. In that regard, we must determine whether the Rule 11 proceedings established a sufficient factual basis for Carr's guilty plea.6 On direct appeal, "it is well settled that a defendant may raise . . . the failure of a district court to develop on the record a factual basis for a plea as required by Rule 11(f)." United States v. Mitchell, 104 F.3d 649, 652 n.2 (4th Cir. 1997). We may reverse the district court's determination that there is a sufficient factual basis for a guilty plea only if we find an abuse of discretion. Id. at 652. It is also settled that the judge may establish the factual basis for a guilty plea through questioning in open court, documents, or other evidence in the record. United States v. DeFusco, 949 F.2d 114, 117 (4th Cir. 1991). The court must satisfy itself that all the elements of the charged offense were committed. Mitchell, 104 F.3d at 652.

14

In Mitchell, our Court recently upheld a conviction on a guilty plea where the defendant contended there was no evidence that he had "actively employed" a firearm. He asserted on appeal that his conviction should be vacated in light of a Supreme Court decision construing the statutory term "use" as requiring proof of active employment. Id. (referring to Bailey v. United States, 516 U.S. 137, 144 (1995)). After considering the evidence at the Rule 11 hearing, we concluded that, although there was no sufficient basis to determine that Mitchell had "used" the

firearm, there was ample evidence that he had "carried" it (an alternative ground for conviction), and that his plea was therefore valid. Mitchell, 104 F.3d at 652.

15

In this case, however, we perceive an insufficient factual basis in this record to support Carr's guilty plea to Count One. At the Rule 11 hearing, conducted pre-Jones on January 10, 2000, the court asked, "Did you as charged in Count 1 set fire to a building in order to damage it and the building was property used by another in or effecting [sic] interstate commerce and you did this intentionally? Did you do that?" J.A. 96-97. While Carr answered "[y]es, sir," J.A. 97, we are unable to adequately discern what this answer meant. It could mean "Yes, I set fire to a building," or "Yes, the property was used by another in or affecting interstate commerce," or "Yes, I did it intentionally," or some combination of these possible constructions. If Carr answered the last question posed, "Did you do that?", his affirmative response pertains to Carr's own actions and not to Carr's knowledge of any use of the property in interstate commerce.

16

Carr's "[y]es, sir" answer is the only evidence in the Rule 11 record supporting the interstate commerce element of his guilty plea to Count One. The Government's presentation of supporting evidence at the plea proceeding related only that Carr intentionally set fire to a building and that the building was used as a church and residence. Significantly, we have recently determined that use of a building as a church does not alone qualify it as being "used in" interstate commerce. United States v. Terry, 257 F.3d 366, 369 (4th Cir. 2001); accord United States v. Odom, 252 F.3d 1289, 1296-97 (11th Cir. 2001) (finding donations from out of state, purchase of Bibles and prayer books out of state, and indirect contributions to out-of-state church organization "too passive, too minimal and too indirect to substantially affect interstate commerce"); United States v. Johnson, 246 F.3d 749, 750 n.1 (5th Cir. 2001) (refusing to allow "aggregation theory" to support connection to interstate commerce in church arson prosecution). At the time of Carr's plea and sentencing, neither the district court nor the parties enjoyed the illumination on the applicable legal principles provided by the Jones and Terry decisions. As a result, the court was unable to correctly apply these legal principles, which in itself creates an abuse of discretion. Koon v. United States, 518 U.S. 81, 100 (1996). As Chief Judge Wilkinson observed in Terry, "not all buildings, and not all churches, come within the ambit of S 844(i)." 257 F.3d at 371. A S 844(i) plea proceeding must therefore adequately demonstrate that the building was in fact actively employed in interstate commerce.7 This record fails to do so, and we conclude that there was an insufficient factual basis for the judgment of conviction on Count One.

IV.

17

Because Carr's Rule 11(f) plea proceeding on Count One was deficient in this single context, we must also determine what relief, if any, Carr is to receive. Several alte

18

rnatives are possible, such as either vacating the acceptance of his guilty plea to Count One or vacating his judgment of conviction on that count. While we have not previously had occasion to directly address this specific question, a thorough analysis of the issue was performed by the Sixth Circuit in United States v. Tunning, 69 F.3d 107 (6th Cir. 1995). Under the "two-remedy rule" adopted by that court, when

19

the error [of the plea hearing] involves a problem with the district court's state of mind, for example . . . the record does not include sufficient information from which the district court could find a factual basis for the guilty plea, the appropriate remedy is to remand to the district court for further proceedings to create the appropriate record.

20

Id. at 115. On the other hand, if "the error involves the defendant's state of mind, such as when the . . . court failed to determine that the defendant was competent . . . the appropriate remedy is to vacate the plea and remand so that the defendant can plead anew." Id. Since Tunning involved the district court's state of mind, that court vacated Tunning's conviction and remanded for further proceedings. This two-tiered approach, distinguishing between the court's state of mind and the defendant's state of mind, was first enunciated by the Third Circuit in United States v. Allen, 804 F.2d 244 (3d Cir. 1986) (remanding for further hearings on factual basis for plea when district court may have accepted plea based on erroneous assumption).

21

We, like the Sixth Circuit, see the two-remedy rule developed in Allen as "an appropriate analytical tool" in determining the proper remedy for a Rule 11 violation. United States v. Goldberg, 862 F.2d 101, 108 n.4 (6th Cir. 1988). A Rule 11 record that fails to reflect that the defendant voluntarily and knowingly entered a guilty plea requires a different cure than a record that does demonstrate the requisite knowledge by the defendant, but fails to sufficiently reflect the district court's basis for accepting the plea. When the record is deficient as to the defendant's state of mind -and this deficiency affects the defendant's substantial rights -the defendant may be entitled to plead anew.8 Where, as in this case, the sole defect in the Rule 11 record is the lack of a sufficient factual basis for the judgment of conviction, however, the proper remedy is to vacate the conviction and remand. Tunning, 69 F.3d at 115; accord United States v. Keiswetter, 860 F.2d 992, 997-98 (10th Cir. 1988) (remanding in part for written findings on factual basis to be certified to appeals court as supplement to record on appeal); see also United States v. Hourihan, 936 F.2d 508 (11th Cir. 1991) (allowing defendant to enter new plea when defendant was not correctly advised of minimum mandatory sentence); United States v. Parra-Ibanez, 936 F.2d 588, 598 (1st Cir. 1991) (declining to vacate plea and remanding for evidentiary hearing when it could not be determined whether error was harmless on existing record); Montgomery v. United States, 853 F.2d 83 (2d Cir. 1988) (reversing and remanding when defendant did not admit acts constituting illegal conspiracy).

22

This situation involves the lack of a sufficient factual basis for Carr's guilty plea, a scenario involving, as in Tunning, "the district court's state of mind." 69 F.3d at 115. As we have noted, the court in that case vacated Tunning's conviction and remanded for further Rule 11 proceedings. We are content to adopt and apply the tworemedy rule explained in Tunning, and in so doing we must vacate Carr's conviction as to Count One and remand for further Rule 11 proceedings on that count. We will not, however, vacate Carr's guilty plea to that count or disturb the plea agreement between Carr and the Government. If, in further Rule 11 proceedings, the Government can establish a sufficient factual basis for the interstate commerce prong of S 844(i), the district court may reinstate Carr's judgment of conviction on Count One. See United States v. Johnson, 246 F.3d 749, 752 (5th Cir. 2001) (vacating guilty plea and remanding for further proceedings on, inter alia, whether factual basis of guilty plea was sufficient on interstate commerce element); United States v. Rea, 223 F.3d 741, 744 (8th Cir. 2000) (reversing conviction and remanding for determination of whether church annex had sufficient connection to commerce), conviction reinstated at 2001 WL 407238 (D. Minn.).

V.

23

Pursuant to the foregoing, we dismiss Carr's appeal of the Guidelines departure issue. We vacate his judgment of conviction on Count One, and we remand for further Rule 11 proceedings thereon and for such other and further proceedings as may be appropriate.

24

DISMISSED IN PART AND VACATED AND REMANDED IN PART

Notes:

1

In considering Carr's motion for a downward departure, the court stated as follows:

The Court has carefully considered this matter pursuant to United States Sentencing Guideline 5H1.4 and 18 U.S. Code 3553B, both of which have been reviewed at this bench sitting by the Court. The Court is of the belief that these matters can be properly considered and properly treated by the United States Bureau of Prisons and that they existed at the time of the commission of this crime and perhaps other criminal involvement of this Defendant, and the Court is not inclined to grant the Defendant's motion and there being no affirmative law requiring the Court to go further then denies the motion of the Defendant.

J.A. at 116-17 (emphasis added).

2

The statute underlying Carr's conviction for Count One, 18 U.S.C. S 844(i), provides, in relevant part, as follows:

Case 18-80386    Doc 78-1    Filed 07/05/19    Page 41 of 41

Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned . . . fined . . . or both.

3

In its handling of this case, the district court did not have the benefit of the Supreme Court's decision in United States v. Jones, which was rendered on May 22, 2000, well after Carr's Rule 11 colloquy of January 10, 2000, and his sentencing hearing of April 17, 2000. It is appropriate to consider Jones here, however, because it applies to cases that are not yet final, including those on direct appeal. Griffith v. Kentucky, *479 U.S. 314* (1987); United States v. Ismail, *97 F.3d 50* (4th Cir. 1996).

4

Count One of Carr's superseding indictment alleges as follows:

On or about June 9, 1998, in the Eastern District of North Carolina, LENT CHRISTOPHER CARR II, defendant herein, did maliciously damage and destroy, by means of fire, a building located at 2115 Stokes Road, Greenville, North Carolina, which building was used in interstate commerce and in activity affecting interstate commerce in violation of Title 18, United States Code, Section 844(i).

J.A. 24.

5

Some courts have determined that a validly entered unconditional guilty plea to an S 844(i) indictment waives the right to appeal the court's determination that the interstate commerce element was satisfied. See Beck, 250 F.3d at 1166; United States v. Grassie, *237 F.3d 1199*, 1208 (10th Cir. 2001) (upholding conviction by jury where interstate commerce element was stipulated and other evidence of use in commerce was presented at trial); United States v. Martin, *147 F.3d 529*, 531-32 (7th Cir. 1998) (deciding, pre-Jones, that guilty plea waived any challenge to interstate commerce element); United States v. Viscome, *144 F.3d 1365*, 1370 (11th Cir. 1998) (finding, prior to Jones, that guilty plea waived nonjurisdictional defects including sufficiency of evidence supporting interstate commerce element).

6

Rule 11(f) of the Federal Rules of Criminal Procedure provides that "[n]otwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such a plea without making such inquiry as shall satisfy it that there is a factual basis for the plea." The court need not satisfy itself that a jury would find the defendant guilty, or even that defendant is guilty by a preponderance of the evidence. United States v. Maher, *108 F.3d 1513*, 1524 (4th Cir. 1997). The district court must "assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty." Id.

7

The Government represents in its appellate brief that it possesses evidence sufficient to establish that the mobile home Carr burned was in fact used in interstate commerce. It asserts, for example, that he rented a room to a non-family member, that day care services were offered for a fee in the building, that he conducted religious and social activities there, and that offerings from church members were collected there and used to pay church expenses and his salary. While that evidence may be appropriate for consideration by the district court on remand, none of it is present in the Rule 11 record.

8

Rule 11(h) of the Federal Rules of Criminal Procedure provides that "[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded."